RECEIVED
USDC CLERK, CHARLESTON, SC

2006 OCT 16  A 10: 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Kenneth Maurice Wigfall,          )      C. A. No. 2:06-1750-HFF-RSC
#258402,                          )
                                  )
              Petitioner,         )
                                  )
         -versus-                 )      **REPORT AND RECOMMENDATION**
                                  )
Stan Burtt, Warden; and Henry     )
McMaster, Attorney General        )
for South Carolina,               )
                                  )
              Respondents.        )

This habeas corpus petition under 28 U.S.C. § 2254 filed June 9, 2006, by a state prisoner proceeding *pro se* and *in forma pauperis* is before the undersigned United States Magistrate Judge for a report and recommendation on the Respondents' summary judgment motion filed on September 5, 2006.  28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

The Petitioner is currently incarcerated in Lieber Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of court of Jasper County.  Petitioner was indicted in October 1998 for the murder of Cleveland Brown.  (PCR App. Pp. 364-65). Stephen T. Plexico, Public Defender, and John Douglas Bryan, Assistant Public Defender, represented Petitioner on the charge. A jury trial was held May 17-19, 1999, before the Honorable James Edward Lockemy.  The jury convicted Petitioner of voluntary manslaughter.  (PCR App. p. 346, lines 22-25).  The judge

1

sentenced him to twenty-seven (27) years imprisonment. (PCR App. p. 356, lines 12-14). Petitioner appealed.

Robert M. Pachak, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented Petitioner on appeal. Appellate counsel filed a Final Brief of Appellant in the Supreme Court of South Carolina on November 21, 2000, and raised the following issues:

> I.   Whether the trial court erred in admitting a crime scene photo showing the bed the victim died in, which was unduly prejudicial and of no evidentiary value to the state's case?
>
> II.   Whether the trial court erred in refusing to charge the jury on the defense of accident when there was evidence to warrant such a charge?

(Final Brief of Appellant, p. 3).

The State filed its final brief on November 6, 2000. The Supreme Court of South Carolina affirmed the conviction on March 20, 2001. State v. Wigfall, Memorandum Opinion No. 2001-MO-019 (S.C.Sup.Ct. filed March 20, 2001). (PCR App. pp. 362-63). The Court issued the remittitur on April 9, 2001.

On September 14, 2001, Petitioner filed a *pro se* application for post-conviction relief ("PCR"), in which he raised the following claims:

> 9(a)  ineffective assistance of counsel;
> 9(b)  structual error;
> 9(c)  Prosecutor's misconduct.

(PCR App. p. 329).

2

Deborah A. Malphrus, Esquire, represented Petitioner in the action.  The State made its return on May 9, 2002.  (PCR App. pp. 397-99).  An evidentiary hearing was held July 11, 2003, before the Honorable Jackson V. Gregory.  (PCR App. p. 401).  At the conclusion of the hearing, the PCR judge took the matter under advisement.  (PCR App. p. 481).  The PCR judge issued an order granting post-conviction relief on September 30, 2003.  (PCR App. pp. 483-487).  The State appealed the grant of relief.

The State filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina on August 16, 2004, and presented the following question:

> Was trial counsel ineffective for failing to call additional witnesses to corroborate testimony relevant to the Respondent's defense of self-defense?

(Petition for Writ of Certiorari, p. 2).

Aileen P. Clare, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented Petitioner on appeal.  Appellate counsel filed a return to the petition on September 30, 2004.  The Supreme Court of South Carolina granted the petition on August 12, 2005, and directed the parties brief the issue presented.  The State filed its brief on October 11, 2005.  Petitioner filed his brief on December 9, 2005.  The Supreme Court of South Carolina reversed the grant of relief on May 8, 2006.  Wigfall v. State, Memorandum Opinion No. 2006-MO-017 (S.C.Sup.Ct. filed May 8, 2006).  The Court issued the

3

remittitur on May 24, 2006.

The petitioner was provided a copy of the respondents' summary judgment motion in this court on September 5, 2006, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The petitioner responded to the motion on October 2, 2006. Hence it appears consideration of the motion is appropriate.

The following documents have been made part of the file here:

      (1)  PCR appendix;
      (2)  Final Brief of Appellant;
      (3)  Final Brief of Respondent;
      (4)  April 9, 2001 Remittitur;
      (5)  Petition for Writ of Certiorari;
      (6)  Return to Petition for Writ of Certiorari;
      (7)  August 12, 2005 Supreme Court of South Carolina Order (granting petition);
      (8)  Brief of Petitioner;
      (9)  Brief of Respondent;
      (10) Wigfall v. State, Memorandum Opinion No. 2006-MO-017 (S.C.Sup.Ct. filed May 8, 2006);
      (11) May 24, 2006 Remittitur.

### GROUNDS FOR RELIEF

In his Petition for Writ of Habeas Corpus, Petitioner raises the following challenges to his conviction:

      A.   Ground One:  Trial counsel's failure to call any witnesses in support of defense. Ineffective assistance of counsel. Whether or not it was error for South Carolina Supreme Court to reject the PCR court's ruling?

B.    Ground Two:  Why did Attorney General use
Tainted Testimony from State's witness "Mrs.
Lottie Mae Jordan" in their writ of certiorari.
Whether or not it was error for the South Carolina
Supreme Court to rely on what is believed to be
"tainted" testimony of Mrs. Jordan?

(Habeas Petition, pp. 6-7, and attachments).

## STANDARD OF REVIEW

The present habeas corpus petition has a delivery date of
March 13, 2006.  Accordingly, the provisions of the Antiterrorism
and Effective Death Penalty Act ("AEDPA") apply to this case.
Lindh v. Murphy, 117 S.Ct. 2059 (1997).  Under the AEDPA, federal
courts may not grant habeas corpus relief unless the underlying
state adjudication resulted in a decision that was contrary to,
or involved an unreasonable application of clearly established
federal law, as determined by the Supreme Court of the United
States; or resulted in a decision that was based on an
unreasonable application of the facts in light of the evidence
presented at the state court proceeding.  28 U.S.C.
§2254(d)(1)(2).

The first requirement has been explained by the United
States Supreme Court in Williams v. Taylor, 120 S.Ct. 1495
(2000)(plurality opinion).  Writing for a plurality of the Court,
Justice O'Connor held that,

... § 2254(d)(1) places a new constraint on the
power of a federal habeas corpus court to grant a
state habeas petitioner's application for a writ
of habeas corpus with respect to claims
adjudicated on the merits in state court.  Under §

5

> 2254(d)(1) the writ may issue only if one of the
> following two conditions is satisfied – the
> state-court adjudication resulted in a decision
> that (1) 'was contrary to. . . clearly established
> federal law as determined by the Supreme Court of
> the United States,' or (2) 'involved an
> unreasonable application of . . . clearly
> established federal law as determined by the
> Supreme Court of the United States.'

Id. at 1523 (O'Connor, J., concurring in judgment).

With respect to the "unreasonable application" clause, Justice O'Connor further explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 1522.

Additionally, a determination of a factual issue made by a state court shall be presumed correct. A credibility determination by the state court is also afforded deference. See, e.g., McWee v. Weldon, 283 F.3d 179, 186 (4th Cir. 2002); Coleman v. Quarterman, 456 F.3d 537, 540 (5th Cir. 2006); Rolling v. Crosby, 438 F.3d 1298 (11th Cir. 2006). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In sum, the AEDPA amendments exalt the role that a state court's decision plays in a habeas decision by specifically directing the federal court to make the state court decision the

6

starting point of federal review; only if that decision deviates from the paradigm recited in § 2254(d) can a habeas court grant relief.  A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.

### EXHAUSTION AND PROCEDURAL BAR

The respondent correctly asserted that Petitioner's second ground for relief, "Ground Two:  Why did Attorney General use Tainted Testimony from State's witness "Mrs. Lottie Mae Jordan" in their writ of certiorari.  Whether or not it was error for South Carolina Supreme Court to rely on what is believed to be "tainted" testimony of Mrs. Jordan?" is procedurally barred from consideration on the merits here.  A review of Petitioner's argument in this ground reveals that he is complaining that his trial counsel did not adequately cross-examine Lottie Jordan when he failed to clarify her testimony regarding a prior incident with the victim.  This argument was not presented to the PCR court or to the South Carolina Supreme Court in the Petition for a Writ of Certiorari from the decision of the PCR court.  Additionally, Petitioner has not overcome the default by showing cause for the default and prejudice therefrom, or actual innocence.  The ground is unavailable for review on the merits in a federal habeas corpus proceeding as a result.

7

The exhaustion requirement set forth in 28 U.S.C. § 2254(b) requires that "a habeas petitioner must fairly present his claim to the state's highest court." Baldwin V. Reese, 124 S. Ct 1347, 158 L.Ed.2d 64 (2004). The petitioner bears the burden of proving a ground for habeas relief has been exhausted because the exhaustion requirement, although not jurisdictional, is strictly enforced. Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), cert. denied, 118 S.Ct. 102 (1997).

However, when a petitioner has no further way to exhaust his unexhausted claims, he is not required to attempt to do so; his claims are deemed technically exhausted for habeas purposes. Matthews v. Evatt, 105 F. 3d 907 (4th Cir. 1997).

Although the claims are technically exhausted, they are nonetheless unreviewable here on the merits because an adequate and independent state law ground, state procedural bar, is sufficient to uphold the petitioner's convictions. Harris v. Reed, 489 U.S. 255 (1989); Coleman v. Thompson, 501 U.S. 722, 735 (1991). Additionally if a petitioner fails to present a ground for decision, as here, so the state court has nothing upon which to rule, that is a default barring review on the merits here as well. Coleman 501 U.S. at 735; Teague v. Lane, 489 U.S. 288 at 299 (1989). Nonetheless, a petitioner may overcome the default by showing cause for the default and prejudice therefrom, or

8

actual innocence.  See, e.g., Harris v. Reed, 489 U.S. 255
(1989).

## **DISCUSSION**

A review of the record and relevant case law indicates that
the petitioner is not entitled to habeas corpus relief on his
first ground and that his second ground is procedurally barred
from review.

Petitioner's first ground is, "Trial counsel's failure to
call any witnesses in support of defense. Ineffective assistance
of counsel. Whether or not it was error for South Carolina
Supreme Court to reject the PCR court's ruling?"  This ground was
presented to he South Carolina Supreme Court, but the court
rejected the contention.  It does not appear that decision was
"contrary to, or involved an unreasonable application
of" clearly established federal law as decided by the United
States Supreme Court, or that the decision "was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceedings."  28 U.S.C. § 2254(d).

The South Carolina Supreme Court reviewed and applied
controlling United States Supreme Court law under Strickland v.
Washington, 466 U.S. 668 (1984) to Petitioner's challenge to the
representation he received from trial counsel.  The court found
that Petitioner had not carried his burden to show prejudice from

his counsel's failure to call Joseph Johnson and Lillie Mae Brown
as defense witnesses.

A review of the record indicates that the court's review of
the record is accurate.  The court reviewed the facts thusly:

> Respondent lived at a Jasper County mobile
> home rented by his aunt, Lottie Jordan. Two other
> men, Randy Brown (Randy) and Cleveland Brown
> (Victim), who are not related, also lived with Ms.
> Jordan.
> Respondent's primary defense at trial was
> that he acted in self-defense and the stabbing was
> an accident. Respondent testified he returned home
> at about 10:30 p.m. on September 20, 1998, after
> attending a fish fry where he consumed alcoholic
> drinks. Additionally, he was taking prescription
> medication because he had been in a recent
> automobile accident.
> Victim apparently overheard Respondent argue
> with his aunt about Respondent's use of her car.
> Respondent testified he heard Victim, who was in
> an adjoining bedroom, say, "I'll shoot that
> n_____." Respondent grabbed a knife and went to
> the door of Victim's room, where he saw Victim
> reaching across the bed for what Respondent
> believed was a gun. Respondent dove across the
> bed, grabbed Victim and pulled Victim toward him;
> as he did, Victim was accidentally stabbed in the
> chest with the knife. Respondent testified he was
> afraid of Victim based on his knowledge of
> Victim's violent tendencies and the belief Victim
> had a gun, but he only meant to disarm Victim and
> did not intend to harm him. Respondent admitted he
> never saw a weapon.
> Respondent testified of several incidents in
> which Victim was argumentative or threatened
> violence toward others, including Randy.
> Respondent further had been told of a handgun and
> another rifle or shotgun in the Victim's bedroom.
> Investigators did not find any firearms in the
> mobile home on the night of the stabbing.
> Ms. Jordan testified Respondent was a
> disagreeable person and the aggressor in past
> disputes with Victim. She described Victim as a
> "very quiet" man. Ms. Jordan denied Victim was a

violent person or that he had ever threatened anyone with a knife. She testified Victim described Randy Brown as his "brother." Ms. Jordan denied knowing Victim had ever shot anyone in the past, and asserted she did not know about his reputation in the community, On cross-examination Ms. Jordan testified that Victim, while drunk, previously had pointed a gun at her, and that she had called authorities on two occasions to remove Victim from the house.

Ms. Jordan testified that, while arguing about the car on the night of the stabbing, Respondent angrily kicked over the kitchen table and said, "I'll kill you, b," and put a knife to her chest. Respondent said he was going to "kill this gray-headed m____f____," ran directly into Victim's room, and stabbed him in the chest as he lay sleeping. Ms. Jordan testified Respondent had both a knife and a gun that night, and threatened to kill her and Randy after the stabbing. Ms. Jordan denied Victim threatened to shoot Respondent immediately before the fatal stabbing.

Randy Brown testified he heard Respondent argue with Ms. Jordan about the use of her car. He did not Witness the stabbing but heard Ms. Jordan yell for someone to call the police, and then a table overturned. He denied seeing Victim with a gun previously and did not hear Victim threaten Respondent that night. Randy testified Victim had shot someone previously, but did not offer testimony corroborating Respondent's assertions that Victim had threatened Randy.

Sheriff's and emergency officials testified at trial that Respondent appeared "spacey," "belligerent," and "somewhat intoxicated" when arrested, but he did not resist arrest, Respondent became "wild" and began cursing while seated in the rear of a police cruiser, kicking out a rear passenger window. Respondent may have been angered by officers' refusal to loosen tight handcuffs.

An autopsy revealed Victim had a blood alcohol level of 0.10 at the time of death. A urine drug screen tested positive for barbiturates and ephedrine/pseudoephedrine, a cold or sinus medication sold as Sudafed.

A jury convicted Respondent of voluntary manslaughter. He was sentenced to twenty-seven years in prison. This Court affirmed the

conviction and sentence. State v. Wigfall, Op. No. 2001-MO-19 (S.C. Sup. Ct. filed March 20, 2001).

At the PCR hearing, Respondent presented his own testimony, the testimony of Lillie Mae Brown and a stipulation regarding the testimony of Joseph Johnson.

Respondent offered similar testimony to that which he offered at trial regarding his background, his knowledge of Victim's reputation for violence, and the circumstances of the fatal stabbing. Respondent testified he asked his attorney to call Johnson and Lillie Mae Brown. Respondent's attorney testified he did not recall interviewing the witnesses and had no record of them in his file.

The parties stipulated that Johnson, Ms. Jordan's next-door neighbor and landlord, would have testified Victim came to his house carrying a gun about two weeks before the fatal stabbing. Victim told Johnson "he wanted to leave that house." Victim drank a beer and fell asleep. Johnson took the gun away from the victim and returned the weapon to Ms. Jordan's home the next day, handing it to Respondent and another person.

Lillie Mae Brown testified she was in Ms. Jordan's car with Respondent and Victim when Victim began cursing Respondent and threatening to kill him. While Respondent was in a store, Victim "kept on saying, Yeah, he's a dead man, and he started cursing me, threatening me, telling me what he was gonna do to me." Respondent returned to the car to calm Ms. Brown and Victim, but Victim continued to curse and threaten Respondent. Ms. Brown testified Victim had a reputation in the community for violence, for "slitting people."

The PCR judge granted relief to Respondent, finding his trial attorney was ineffective in failing to call the two witnesses who would have supported Respondent's claim that he acted in self-defense.

The court then applied the Strickland factors and found the petitioner had failed to demonstrate prejudice:

12

> We conclude the record does not contain probative
> evidence supporting the PCR judge's decision.
> While Respondent arguably has shown his attorney
> erred in not calling the two witnesses presented
> at the PCR hearing, Respondent has failed to show
> prejudice.
>     Respondent has failed to prove there is a
> reasonable probability the outcome of the trial
> would have been different had the two witnesses
> testified. The testimony of the two witnesses is
> largely cumulative to information presented to the
> jury at trial, ie., Victim was a hard-drinking man
> with violent tendencies who previously had
> threatened to kill or harm Respondent.
> Respondent's testimony and, to a lesser degree,
> the testimony of Ms. Jordan and Randy Brown on
> cross-examination, adequately conveyed this
> information to the jury. Consequently, evidence of
> probative value does not support the PCR judge's
> ruling.

While reasonable people may disagree with the decision of

the South Carolina Supreme Court, it cannot be said that the

decision was contrary to, or involved an unreasonable application

of clearly established federal law, or that the decision was

based on an unreasonable application of the facts in light of the

evidence presented at the state court proceeding.  28 U.S.C. §

2254(d)(1)(2).  Giving the state court the deference required by

the AEDPA, it appears that the petitioner is not entitled to

habeas relief on his properly exhausted ground.

## **CONCLUSION**

Accordingly, for the aforementioned reasons it is recommended that the respondents' motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
October 16, 2006

14

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
<u>&</u>

The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made** *and* **the basis for such objections.** *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, *supra*; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
